## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **BAILEY & GLASSER LLP**, **DEREK G. HOWARD LAW FIRM, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**MCTIGUE LAW LLP**<br><br>Defendant. | Civil Action No. 19-cv-11992-PBS |

## ANSWER AND COUNTERCLAIM OF
## MCTIGUE LAW LLP

Defendant McTigue Law LLP ("Defendant") submits the following Answer and Counterclaim in response to the Complaint (ECF No. 001) filed by Plaintiffs Bailey & Glasser LLP and Derek G. Howard Law Firm, Inc. ("Plaintiffs" or "Plaintiffs Bailey & Glasser and the Howard Law Firm") on September 20, 2019. This Answer and Counterclaim is based upon personal knowledge, reasonable investigation, and/or upon information and belief. In responding to the allegations below, McTigue Law LLP denies averments in the headings of the Complaint, and additionally denies all allegations not expressly admitted below. The Complaint's language is reproduced above Defendant McTigue Law LLP's answers.

1.      On October 21, 2016, Plaintiffs and Defendants (together the "Parties") entered into a contract ("Co-Counsel Agreement") to prosecute a civil action *Henderson v. BNY Mellon, N.A.*, Civ. Action No. 15-cv-10599-PBS ("*Henderson Action*" or "*Action*") on behalf of the

1

plaintiffs in that lawsuit.

**ANSWER:** Defendant admits the allegations as to McTigue Law LLP in Paragraph 1,

adding that the Co-Counsel Agreement further covered prosecution of *Hershenson v. BNY*

*Mellon, N.A. et al.* (16-cv-11480-PBS) (*"Hershenson Action"*).[1]

2. Before the Parties executed the Co-Counsel Agreement, the Honorable Patti

Saris, United States District Judge, who presided over the *Henderson Action* made several

findings:

- Mr. McTigue is unable to work constructively as a co-lead counsel on a legal team with his previous co-counsel.

- Mr. McTigue's treatment of co-counsel in this litigation is deeply disturbing.

- Mr. McTigue rebuffed efforts by co-counsel to contact Ms. Henderson to prepare her for deposition.

- Mr. McTigue attempted to cancel the date of a court-ordered mediation without the consent of his co-counsel.

- Mr. McTigue unilaterally terminated co-counsel without warning and without attempting to work out any disagreements.

- Given Mr. McTigue's contumacious, uncivil conduct in this litigation, he would not be an effective lead or co-lead class counsel.

*Henderson Action*, ECF # 192.

**ANSWER:** Defendant denies the allegations in Paragraph 2, except that Defendant

admits that on September 20, 2016, the Honorable Patti Saris issued an order, ECF No. 192,[2] that

contained language similar to that in Paragraph 2.

---

[1] Defendant will use *"Henderson Action"* and *"Action"* to refer to both the Henderson and Hershenson cases in this brief.

[2] Except for the reference in the first paragraph of this answer, all ECF references herein refer to the docket in the *Henderson Action.*

3.     The Parties entered into the Co-Counsel Agreement to resolve a protracted dispute over which counsel would control the case on behalf of the putative class alleged in the *Henderson Action* after Defendants had attempted to terminate Plaintiffs from the *Henderson Action*.

**ANSWER:** Defendant denies the allegations in Paragraph 3, except that Defendant admits that on October 21, 2016 Plaintiffs Bailey & Glasser and the Howard Law Firm and Defendant McTigue Law LLP entered into the Co-Counsel Agreement to prosecute the *Henderson Action* and the *Hershenson Action* on behalf of the plaintiffs in those lawsuits and to resolve any and all differences and disputes.

4.     The Co-Counsel Agreement provided that Plaintiffs would serve as Co- Lead Counsel and that Defendants would serve on a "Plaintiff's Executive Committee."

**ANSWER:** Defendant denies the allegations in Paragraph 4, except that Defendant admits that the Co-Counsel Agreement provided that Plaintiffs Bailey & Glasser and the Howard Law Firm would serve as Co-Lead Counsel and that McTigue Law LLP would serve as the Plaintiff's Executive Committee.

5.     The Co-Counsel Agreement provided that Defendants' responsibility was "to assist Co-Lead Counsel in their responsibilities," that they would perform twenty percent of the work and pay twenty percent of the "Common Expenses" incurred in prosecuting the *Henderson Action*.

**ANSWER:** Defendant denies the allegations in Paragraph 5, except that Defendant admits that the Co-Counsel Agreement provided that "Plaintiffs' Executive Committee shall be responsible for assisting Co-Lead Counsel in their responsibilities," and that "McTigue Law LLP (and any counsel McTigue Law LLP associates) will be apportioned 20% of the

lodestar work, awarded 20% of the fees, and pay 20% of the [Common E]xpenses in this litigation, all on an ongoing basis, as measured from the beginning of the litigation."

6.      The Parties understood and agreed that Defendants would continue to serve as liaison counsel to Plaintiff Ashby Henderson and facilitate communications between Ms. Henderson and Plaintiffs.

**ANSWER:**  Defendant denies the allegations in Paragraph 6.

7.      The Co-Counsel Agreement was executed shortly after a status conference with Judge Saris.

**ANSWER:** Defendant admits the allegations in Paragraph 7.

8.      At the October 13, 2016 status conference, Defendants told Judge Saris that: "[W]e have reached an agreement with [Plaintiffs] to work with them under their leadership. We are working together. We have agreed to prosecute both actions together. Under their leadership, I will be counsel to Ms. Henderson." *Henderson Action*, Oct. 13, 2016 Status Hearing Transcript, at 15.

**ANSWER:** Defendant admits the allegations in Paragraph 8.

9.      Plaintiffs expended hundreds of thousands of dollars on Common Expenses, including $295,000 on expert witnesses, the vast majority of which was paid after the Parties executed the Co-Counsel Agreement. Despite repeated requests by Plaintiffs that Defendants pay their agreed-upon twenty-percent share of Common Expenses, Defendants paid nothing to Plaintiffs to reimburse them for the Common Expenses paid by them after the execution of the Co-Counsel Agreement.

**ANSWER:**  Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 9. As to the second sentence,

Defendant denies the allegations, except that Defendant admits that all Parties, Plaintiffs Bailey & Glasser and Howard Law and Defendant McTigue Law LLP, did not provide their Common Expenses to each other until shortly before all fee petitions were filed August 23, 2019, and any amounts for such payments to meet the agreed-upon percentages in the Co-Counsel Agreement could not be calculated, and no payment could be made by any Plaintiff or Defendant firm before August 23, 2019.

10.     Defendants failed to uphold their agreement to perform 20% of the work.

**ANSWER:**  Defendant denies the allegations in Paragraph 10.

11.     Despite agreeing to cooperate with Plaintiffs, Defendants continued their acrimonious and obstructionist approach to collaboration that Judge Saris had previously criticized.

**ANSWER:** Defendant denies the allegations in Paragraph 11.

12.     Instead of facilitating communication with Ms. Henderson and Plaintiffs, Defendants repeatedly interfered with and blocked communications between Plaintiffs and Ms. Henderson.

**ANSWER:** Defendant denies the allegations in Paragraph 12.

13.     Defendants sent multiple emails in April 2018 to Plaintiffs demanding that all communication with Ms. Henderson must go through them; that they alone would relay Plaintiffs' messages to Ms. Henderson and then relay her responses.

**ANSWER:** Defendant denies the allegations in Paragraph 13, except that Defendant admits that on April 6, 2018 and April 9, 2018 McTigue Law LLP requested that communications from Plaintiffs Bailey & Glasser and the Howard Law Firm to Ms. Henderson be put in writing and emailed to Defendant McTigue.

5

14. Defendants also sought to undermine and sabotage Plaintiffs' role as Co- Lead Counsel in the *Henderson Action*, the very role they had agreed Plaintiffs would undertake in the Co-Counsel Agreement, and that they would serve to assist. In April 2018, two other law firms sought to intervene in the *Henderson Action* as class counsel for investment claims, alleging among other things that Ms. Henderson was an inadequate class representative, and directly attacking her ability to serve in that role. *Henderson Action*, ECF # 431. On May 2, 2018, the day the opposition to the intervention motion was due, Defendants unilaterally filed a notice of non-opposition to the intervention motion, purportedly on behalf of Ms. Henderson, even though the motion called her inadequate. *Henderson Action*, ECF # 441. Defendants did not consult with Plaintiffs before filing the non-opposition.

**ANSWER:** Defendant denies the allegations in Paragraph 14, except that Defendant admits that on April 4, 2018 two other law firms filed a motion to intervene in the *Henderson Action,* see ECF No. 430 and 431, and Defendant respectfully refers the Court to the complete filings for their true and complete contents and denies any allegations inconsistent therewith. Defendant further admits that on May 3, 2018, Ms. Henderson, through her counsel McTigue Law LLP, filed a response to the two firm's motion to intervene in which Ms. Henderson did not oppose their April 4, 2018 motion to intervene, and respectfully refers the Court to Ms. Henderson's Motion (ECF No. 441) and its footnote 1 which describes Ms. Henderson's and McTigue Law LLP's efforts to reach and joint consultation with Plaintiff Bailey & Glasser prior to the filing of the non-opposition motion.

15. On the same day Plaintiffs filed an opposition to the motion, Plaintiffs had repeatedly asked Defendants for a phone call to discuss the response to the intervention motion, an impending status report, and mediation scheduling. Defendants prevented direct

communication with Ms. Henderson, and fended off all attempts to discuss these critical matters even with Mr. McTigue.

**ANSWER:** Defendant denies the allegations in Paragraph 15, except that Defendant admits that on May 3, 2018 Ms. Henderson, through her counsel McTigue Law, filed a response to the motion to intervene in which Ms. Henderson did not oppose the April 4, 2018 motion to intervene, and the non-opposition motion's footnote 1 which described Ms. Henderson's and Defendant's consultation with Plaintiffs. ECF No. 441.

16.    On June 8, 2018, while the class certification and summary judgment motions were pending in the *Henderson Action*, Defendants, without contacting Plaintiffs, filed notices of appearance for three new attorneys from the Cohen Milstein firm. *Henderson Action,* ECF ## 449, 450, 451. These lawyers were apparently seeking to take over all or part of the *Henderson Action*. Shortly thereafter, the Cohen Milstein lawyers withdrew.

**ANSWER:** Defendant denies the allegations in Paragraph 16, except that Defendant admits that on June 8, 2018, one attorney from the firm Cohen Milstein Sellers & Toll PLLC filed a notice of appearance and two attorneys from the same firm filed motions for admittance *pro hac vice* with this Court, to represent Ms. Henderson in the *Henderson Action*, ECF Nos. 449, 450, 451, and that shortly thereafter these three attorneys withdrew as attorneys of record. ECF No. 460.

17.    On July 30, 2018, at the summary judgment hearing in the *Henderson Action*, Judge Saris removed Mr. McTigue from the *Henderson Action*. *Henderson Action*, July 30, 2018 Hearing Transcript, at 70-71. At the hearing Judge Saris instructed Mr. McTigue to have *no more involvement* with the class claims. *Id.* at 70-71.

**ANSWER:** Defendant denies the allegations in Paragraph 17, except that Defendant

admits that at a July 30, 2018 hearing in the *Henderson Action*, the Court stated that Mr. McTigue should not be involved in the class action in the *Henderson Action*. Defendant respectfully refers the Court to the full transcript for its true and complete contents and denies any allegations inconsistent therewith.

18.     On August 20, 2018, during a follow up status hearing, Judge Saris ordered Mr. McTigue not just to cease all involvement in the class case, but to stop communicating with Ms. Henderson about the class claims altogether, because his conduct was interfering with Plaintiffs' ability to communicate with Ms. Henderson and was causing discord and tension. *Henderson Action*, Aug. 20, 2018 Hearing Transcript, at 9, 18.

**ANSWER:** Defendant denies the allegations in Paragraph 17, except that Defendant admits that at an August 20, 2018 hearing in the *Henderson Action*, the Court referenced the July 30, 2018 hearing, stated that prior communications between Ms. Henderson, Mr. McTigue and Plaintiffs had created confusion and tension, and that this created discord in the team that interfered with Plaintiffs' ability to communicate effectively. Defendant respectfully refer the Court to the full transcript for its true and complete contents and denies any allegations inconsistent therewith.

## PARTIES

19.     Defendant McTigue Law LLP is a limited liability partnership with a principal office located at 4530 Wisconsin Avenue, NW, Suite 300, Washington, DC, 20016.

**ANSWER:** Defendant admits the allegations in Paragraph 19.

20.     Defendant J. Brian McTigue is an individual attorney and founding partner of McTigue Law LLP.

**ANSWER:** Defendant admits the allegations in Paragraph 20.

21.     Plaintiff Bailey & Glasser LLP is a limited liability partnership with a principal office located at 209 Capitol Street, Charleston, West Virginia, 25301 and a Boston office located at 99 High Street, Suite 304, Boston, Massachusetts, 02110. The two Bailey & Glasser Boston partners were the lead lawyers for the firm in the *Henderson Action*.

**ANSWER:** Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 21.

22.     Plaintiff Derek G. Howard Law Firm, Inc. is a corporation with a principal office located at 42 Miller Avenue, Mill Valley, California, 94941.

**ANSWER:** Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 22.

### JURISDICTION

23.     This Court has subject matter jurisdiction under 28 U.S.C. 1332(a)(1) because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

**ANSWER:**  Defendant answers that this Court has subject matter jurisdiction and retained continuing jurisdiction over the Final Judgment in the *Henderson Action*, and for any other necessary purpose, ECF No. 603, p. 6, and that compulsory counterclaims are grounded jurisdictionally in 28 U.S.C. § 1367(a) and do not need an independent basis of federal jurisdiction. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 (1974).

24.     This Court has personal jurisdiction over Defendants because each of them conducted business in the District of Massachusetts on a regular basis during the relevant time period.

**ANSWER:** Defendant admits the allegations in Paragraph 24.

## COUNT 1 BREACH OF CONTRACT

25.      Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Defendant repeats and incorporates each of its responses to each paragraph above as though fully set forth herein.

26.      By their actions described herein, Defendants engaged in multiple breaches of the Co-Counsel Agreement.

**ANSWER:** Defendant denies the allegations in Paragraph 26.

27.      By their actions described herein, Defendants undermined and sought to sabotage the efforts of Plaintiffs to prosecute the *Henderson Action* on behalf of the class therein.

**ANSWER:**  Defendant denies the allegations in Paragraph 27.

28.      By their actions described herein, Defendants engaged in contumacious conduct, including contempt of Judge Saris's order instructing them to have no further communications with Ms. Henderson in the *Henderson Action*.

**ANSWER:** Defendant denies the allegations in Paragraph 28.

## PRAYER FOR RELIEF

Defendant denies that Plaintiffs are entitled to any relief.

## ADDITIONAL DEFENSES AND AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative and additional defenses, without the burden of proof for any issues to which applicable law places the burden on Plaintiffs. Moreover, nothing stated herein is intended to be construed as an acknowledgement that any particular issue or subject matter is relevant to Plaintiffs' allegations. Furthermore, all defenses are pleaded in the alternative, and none constitutes an admission of liability or that Plaintiffs Bailey & Glasser and the Howard Law Firm are entitled to relief on its claim. Defendant reserves the right to raise

additional defenses, counterclaims, cross-claims, and third-party claims not asserted herein of which it may become aware through discovery or other investigation, or as otherwise may be appropriate.

### First Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Plaintiffs Bailey & Glasser and the Howard Law Firm lack standing to bring this action.

### Third Affirmative Defense

The claims of Plaintiffs Bailey & Glasser and the Howard Law Firm are barred in whole or in part because Defendant acted in compliance with its contractual obligations under the laws of the District of Columbia.

### Fourth Affirmative Defense

The claims of Plaintiffs Bailey & Glasser and the Howard Law Firm are barred in whole or in part by the terms of the applicable contractual agreement or agreements.

### Fifth Affirmative Defense

The claims of Plaintiffs Bailey & Glasser and the Howard Law Firm are barred in whole or in part by doctrine of waiver, estoppel, and/or release.

### Sixth Affirmative Defense

The claims of Plaintiffs Bailey & Glasser and the Howard Law Firm that Defendant violated the Co-Counsel Agreement are barred because Plaintiffs Bailey & Glasser and the Howard Law Firm violated the Co-Counsel Agreement, as described in the Counterclaim *infra,* which are incorporated hereto.

**Seventh Affirmative Defense**

The claims of Plaintiffs Bailey & Glasser and the Howard Law Firm fail because Plaintiffs did not plead the elements of a claim of breach of contract, failed to plead facts establishing that McTigue Law LLP breached its duty to perform under the Co-Counsel Agreement, failed to plead facts that that the alleged breaches of contract were material, and failed to plead facts that Plaintiffs suffered any legally cognizable damages resulted from any such alleged breach.

**Eighth Affirmative Defense**

Plaintiffs Bailey & Glasser and the Howard Law Firm cannot establish that Defendant breached the Co-Counsel Agreement by not reimbursing Common Expenses to Plaintiffs because Plaintiffs fail to plead that the Co-Counsel Agreement required McTigue Law to reimburse Plaintiffs for Common Expenses, and because Plaintiffs did not communicate their own Common Expenses to McTigue Law LLP despite McTigue Law's emailed requests they provide their Common Expenses, preventing determination of the amount of Common Expense incurred by each party to the Co-Counseling Agreement.

**Ninth Affirmative Defense**

The claims of Plaintiff Bailey & Glasser and the Howard Law Firm fail because McTigue Law's alleged non-payment of Common Expenses to Plaintiffs pursuant to the Co-Counsel Agreement was not a violation of the agreement, did not hinder prosecution of the *Henderson Action,* did not constitute a material breach, and because Plaintiffs failed to plead and cannot establish that they suffered legally cognizable damages as a result.

**Tenth Affirmative Defense**

The claims of Plaintiffs Bailey & Glasser and the Howard Law Firm fail because they

cannot establish that Defendant obstructed communications with Ms. Henderson and hindered prosecution of the *Henderson Action*, and that this constituted a material breach of the Co-Counsel Agreement, and because Plaintiffs failed to plead and cannot establish that they suffered legally cognizable damages as a result.

### Eleventh Affirmative Defense

The claims of Plaintiff Bailey & Glasser and the Howard Law Firm fail because Defendant's filing in 2018 on behalf of Ms. Henderson of a non-opposition to the motion to intervene did not violate the Co-Counsel Agreement, did not hinder prosecution of the *Henderson Action*, did not constitute a material breach, and because Plaintiffs failed to plead and cannot establish that they suffered legally cognizable damages as a result.

### Twelfth Affirmative Defense

The claims of Plaintiffs Bailey and Glasser and the Howard Law Firm fail because the Co-counsel Agreement expressly contemplates McTigue Law associating additional counsel, and because associating additional co-counsel would not or did not hinder prosecution of the *Henderson Action,* did not constitute a material breach of the Co-Counsel Agreement, and Plaintiffs failed to plead and cannot establish that they suffered legally cognizable damages as a result.

### Thirteenth Affirmative Defense

Plaintiffs Bailey & Glasser and the Howard Law Firm themselves were unresponsive to the interests of Ms. Henderson and the putative class she sought to represent during the *Henderson Action*, causing Ms. Henderson to ask Defendant to request on her behalf that Plaintiffs Bailey & Glasser and the Howard Law Firm put certain communications to her in emails and send them to Defendant.

### Fourteenth Affirmative Defense

Defendant denies that the findings listed in Paragraph 2 of the Complaint are based on fact, are based on a full record, and are accurate.

### Fifteenth Affirmative Defense

Defendant denies any allegation that McTigue Law terminated co-counsel.

### Sixteenth Affirmative Defense

Defendant did not interfere with Plaintiffs Bailey & Glasser and the Howard Law Firm prosecuting the *Henderson Action.*

### Seventeenth Affirmative Defense

Defendant contributed significantly to the prosecution of the *Henderson Action,* contributing 20.6 percent of the lodestar filed with the Court in the action and under the Co-Counsel Agreement and in equity Defendant McTigue Law is owed 20 percent of the attorneys' fees awarded in the action.

### Eighteenth Affirmative Defense

Defendant expended $24,382 in unreimbursed Common Expenses in prosecuting the *Henderson Action* which Plaintiffs Bailey & Glasser and the Howard Law Firm would not present to the Court to approve for reimbursement and Plaintiffs did not provide to McTigue Law LLP or the Court any meaningful explanation for not presenting those expenses to the Court, or any meaningful explanation for Plaintiffs' opposition to such reimbursement. Defendant must be reimbursed for that amount by Plaintiffs.

### Nineteenth Affirmative Defense

Defendant McTigue Law performed tasks requested by Plaintiffs Bailey & Glasser and the Howard Law Firm pursuant to the Co-Counsel Agreement, except tasks it considered

unethical or a breach of duty to the client and the class she sought to represent.

### Twentieth Affirmative Defense

Defendant did not take an "acrimonious and obstructionist approach to collaboration" with Plaintiffs in the *Henderson Action*, but complied with its ethical duties to loyally and faithfully represent Ms. Henderson and the class she sought to represent.

### Twenty-First Affirmative Defense

Defendant protected the interests of both Ms. Henderson and the putative class she sought to represent during the *Henderson Action*, though disagreements arose between Defendant and Plaintiffs Bailey & Glasser and the Howard Law Firm on what was in the interest of Ms. Henderson and her putative class, but such disagreements cannot preclude Plaintiffs from performance under the Co-Counsel Agreement.

### Twenty-Second Affirmative Defense

Plaintiffs Bailey & Glasser and the Howard Law Firm are not entitled to attorneys' fees or interest under contract law, as they cannot meet the statutory and case law requirements for such a fee or interest award.

### Twenty-Third Affirmative Defense

Plaintiffs Bailey & Glasser and the Howard Law Firm cannot meet the standard for establishing that this Court should enjoin Defendant from contesting the Co-Counsel Agreement and requesting compensation or monies due to them under the Co-Counsel Agreement or in connection with the *Henderson Action* in any forum or jurisdiction.

### <u>COUNTERCLAIM</u>

Defendant, for its Counterclaim against Plaintiffs Bailey & Glasser and the Howard Law Firm, states as follows:

1.      Defendant incorporates the preceding paragraphs as though set forth herein.

2.      The October 21, 2016 Co-Counsel Agreement requires Plaintiffs Bailey & Glasser and the Howard Law Firm to pay McTigue Law LLP 20 percent of the attorneys' fees approved by the Court in the *Henderson Action.*

3.      After agreeing with Bank of New York Mellon to settle the *Henderson Action*, on August 23, 2019, Plaintiffs Bailey & Glasser and the Howard Law Firm submitted a fee petition to the Court. ECF Nos. 589, 590. That petition stated "The McTigue firm's time is excluded from the lodestar because it did not benefit the class" and requested that "the Court's order in this case direct that any attorneys' fees awarded be allocated only to Class Counsel." ECF No. 590 at 15. In their fee petition, Plaintiffs submitted to the Court only $32,579 of the $56,961.28 of McTigue Law's expenses incurred prosecuting the *Henderson Action.*

4.      On August 20, 2019 Plaintiffs Bailey & Glasser and the Howard Law Firm first informed McTigue Law they would not submit McTigue Law's fees to the Court in their fee petition as Class Counsel. Following Plaintiffs statement to McTigue Law, McTigue Law submitted its own fee petition on August 23, 2019 requesting 20 percent of the attorneys' fees awarded and its full $56,961.28 in expenses in the *Henderson Action* for reimbursement, as required by the Co-Counsel Agreement. ECF No. 591, 592.

5.      Plaintiffs Bailey & Glasser and the Howard Law Firm opposed Defendant McTigue Law's fee and expense petition. ECF No. 597.

6.      At the September 6, 2019 final approval hearing in the *Henderson Action*, the Honorable Judge Saris acknowledged that there was a fee dispute between Plaintiffs and Defendant McTigue Law and suggested that the dispute be resolved pursuant to a contract action. *Henderson Action,* September 6, 2019 Hearing Transcript, pp. 31-32. At the hearing,

Judge Saris also acknowledged the expense dispute, and instructed Plaintiffs Bailey & Glasser and the Howard Law Firm to put the disputed amount not included in Plaintiffs' expense request on behalf of McTigue Law—$24,382—into an escrow account until the dispute was resolved. *Id*., pp. 33-34.

7.      At the hearing, Judge Saris also urged Defendant and Plaintiffs to negotiate a resolution of the expense dispute. To date, no such resolution has been reached.

8.      On September 16, 2019 this Court issued an order awarding Plaintiffs Bailey & Glasser and the Howard Law Firm $3,333,333 in attorneys' fees as class counsel in the *Henderson Action*. ECF No. 603 ("Final Order"). In the Final Order, the Court also awarded Plaintiffs the full amount of expense reimbursement requested by Plaintiffs, including the $32,579 requested by Plaintiffs as McTigue Law's expenses.

9.      On information and belief, Plaintiffs Bailey & Glasser and the Howard Law Firm have taken custody of the $3,333,333 in attorney's fees and $404,234 in attorney expenses reimbursed by the class in the *Henderson Action* pursuant to the Final Order.

10.     On October 7, 2019 Plaintiffs Bailey & Glasser and the Howard Law Firm served a summons and complaint on Defendant McTigue Law LLP in this action.

11.     On October 24, 2019, Defendant requested that Plaintiffs Bailey & Glasser and the Howard Law Firm pay McTigue Law the $666,666 owed to McTigue Law under the Co-Counsel Agreement. Defendant further requested confirmation that Plaintiffs Bailey & Glasser and the Howard Law Firm placed the $24,382 expense amount (the amount not included in Plaintiffs' fee and expense petition) into an escrow account, as ordered. Defendant have not received a responses from Plaintiffs Bailey & Glasser and the Howard Law Firm as to these requests.

17

12.     To date, Plaintiffs Bailey & Glasser and the Howard Law Firm have refused to perform under the Co-Counsel Agreement and pay McTigue Law LLP 20 percent of the attorney fees awarded—$666,666—of the *Henderson Action* fee award, despite Plaintiffs being awarded and taking custody of a $3,333,333 attorney's fee award. Instead, Plaintiffs filed the current lawsuit to bar any payment to McTigue Law LLP.

13.     Based on the failure of Plaintiffs Bailey & Glasser and the Howard Law Firm to respond to Defendant's' request to confirm that an escrow fund ordered by the Court in the *Henderson Action* has been created, it is Defendant's belief that Plaintiffs Bailey & Glasser and the Howard Law Firm have not complied with the Court's directive to place $24,382 in escrow until the expense dispute has been resolved.

14.     Defendant McTigue Law performed its obligations under the Co-Counsel Agreement. For all times Defendant McTigue Law provided services in the *Henderson Action* (from 2014 through August 20, 2018), the firm contributed significantly to the Class. For instance, McTigue Law initiated the case and entered a representative agreement with Ashby Henderson on April 29, 2014,[3] contracted on January 27, 2015 with Bailey & Glasser LLP, the Howard Law Firm and Minami Tamaki, LLP[4] to assist with Ms. Henderson's claims (ECF No. 592-3); researched, drafted, and developed the legal strategy for the Action; and developed the theory of losses, and participated in discovery and motion practice with the Plaintiff firms. *See* ECF No. 592 at 4-5.

15.     Based on the lodestar submitted to the Court in the Henderson Action,

---

[3] McTigue Law's Memorandum of Law in support of its fee petition contains a typographic error dating that agreement April 27, 2015. ECF No. 592.

[4] The Minami Tamaki firm was replaced by the Derek G. Howard Law Firm, Inc., who was formerly counsel with the Minami Tamaki firm.

Defendant McTigue Law performed 20.6 percent of the attorney services in the *Henderson Action*. *See* explanation, ECF No. 595 at 4.

16.     Plaintiffs Bailey & Glasser and the Howard Law Firm improperly used, and continue to use, their position as lead counsel in the *Henderson Action* to disparage Defendant before the Court and to increase their own attorney fee award by $666,666 (the amount the Plaintiffs owe to McTigue Law under the Co-Counsel Agreement and are withholding from McTigue Law).

17.     Plaintiffs Bailey & Glasser and the Howard Law Firm have breached their contractual obligations under the Co-Counsel Agreement with Defendant McTigue Law by failing to pay McTigue Law $666,666 out of the Court attorneys' fee award in the *Henderson Action*.

18.     Plaintiffs Bailey & Glasser and the Howard Law Firm did not perform their duties under the Co-Counsel Agreement, including providing McTigue Law LLP contemporaneous access to all case information, and improperly asking McTigue Law LLP to act unethically as to Ms. Henderson and the putative class she was seeking to represent.

19.     The Co-Counsel Agreement's language regarding a percentage division of the fee award is not contingent upon a party's approval of the services performed by any other party under the Agreement.

20.     Plaintiffs Bailey & Glasser and the Howard Law Firm have been unjustly enriched by their refusal to pay McTigue Law the $666,666 owed under the Co-Counsel Agreement in the *Henderson Action*.

21.     The Co-Counsel Agreement states that it will be interpreted under the law of the District of Columbia.

**Count One – Breach of Contract**

22.     Defendant incorporates the preceding paragraphs as though set forth herein.

23.     The Co-Counsel Agreement is a valid and enforceable contract.

24.     McTigue Law LLP has fully performed or tendered all performance required under the Co-Counsel Agreement.

25.     Bailey & Glasser and the Howard Law Firm have breached their duties as set forth in the Co-Counsel Agreement by failing to pay McTigue Law LLP 20 percent of the attorneys' fees awarded by the Court in the Henderson Action, or $666,666.

26.     Bailey & Glasser and the Howard Law Firm have violated the covenant of good faith and fair dealing implicit in the Co-Counsel Agreement by acting to deprive McTigue Law LLP of the benefits of the of the Co-Counsel Agreement by a) refusing to pay McTigue Law LLP the $666,666 owed to McTigue Law LLP under the Agreement and instead unilaterally converting that amount to their own account, b) by acting as class counsel to obstruct and oppose McTigue Law LLP's valid request for an award of attorneys' fees and for full reimbursement of McTigue Law's expenses in the *Henderson Action*.

27.     McTigue Law LLP suffered damages as a direct result of failure of Bailey & Glasser and the Howard Law Firm to perform their promises under Co-Counsel Agreement, including a loss of the $666,666 owed to McTigue Law LLP under the Agreement and a loss of the $24,382 in McTigue Law's expenses which were not reimbursed in the *Henderson Action.*

28.     McTigue Law LLP is entitled recover damages resulting from the failure of Bailey & Glasser and the Howard Law Firm to perform under the Co-Counsel Agreement.

**WHEREFORE,** Defendant demands as follows:

1.     That the Court enter judgment in favor of this counterclaim;

2.      That the Court order Bailey & Glasser and the Howard Law Firm to specifically perform their promises to McTigue Law LLP under the Co-Counsel Agreement and immediately transfer $666,666 to McTigue Law LLP, with interest;

3.      That the Court order Bailey & Glasser and the Howard Law Firm to pay McTigue Law LLP the $24,382 expense amount incurred by McTigue Law LLP in the course of performing under the Co-Counsel Agreement, which amount Bailey & Glasser and the Howard Law Firm, acting as class counsel, refused to present to the Court in class counsel's fee and expense petition and thereafter obstructed the efforts of McTigue Law LLP to obtain reimbursement through its own fee and expense petition, including opposing McTigue Law's petition and failing to pay McTigue Law LLP such amount;

4.      That the Court order Bailey & Glasser and the Howard Law Firm to pay McTigue Law the value of McTigue Law LLP's expectation interest, reliance interest, restitution interest and any other interest created by the Co-Contract Agreement.

5.      That a constructive trust or equitable lien be immediately placed on funds within the possession and control of Bailey & Glasser and the Howard Law Firm in the amount of $691,048 ($666,666 plus $24,382) until this Counterclaim is resolved;

6.      That Plaintiffs Bailey & Glasser and the Howard Law Firm complaint be dismissed with prejudice;

7.      Defendant's costs and attorney's fees herein expended in accordance with the provisions of applicable law be awarded to Defendant; and

8.      All other appropriate relief to which McTigue Law LLP may now or hereafter appear to be entitled.

## **RESERVATION OF RIGHTS**

McTigue Law expressly reserves the right to amend and/or supplement this Answer, Affirmative Defenses, and Counterclaim. McTigue Law reserves the right to raise any additional defenses not asserted herein that may be revealed during the course of discovery or other investigation, or that otherwise are found applicable to it.

Dated: October 28, 2019

Respectfully submitted,

*/s/ J. Brian McTigue*
J. Brian McTigue
bmctigue@mctiguelaw.com
McTigue Law LLP
4530 Wisconsin Avenue, NW, Suite 300
Washington D.C. 20016
Telephone: (202) 364-6900
Facsimile: (202) 364-9960

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on October 28, 2019

*/s/ J. Brian McTigue*
J. Brian McTigue